CARNEY, Justice.
I. INTRODUCTION
A father appeals an order modifying his child support obligation. He first argues that the superior court lacked subject matter jurisdiction to modify the order. He alternatively argues that the court abused its discretion by modifying the support order without sufficient proof of a material change in circumstances. Lastly, the father argues that the court impermissibly retroactively modified the support order.
We hold that the superior court properly exercised its jurisdiction in modifying the support order, that it did not abuse its discretion in modifying the order because there was sufficient proof of material change of circumstances, and that the one-day retroactive modification is a de minimis error that does not require correction. We therefore affirm the superior court's order modifying child support.
II. FACTS AND PROCEEDINGS
Guy Berry and Colleen Coulman have a daughter who was born in May 2010. Berry and Coulman never married. Berry is a soldier; he was stationed at Fort Wainwright until shortly before their daughter was born, when he was transferred to Fort Bragg, North Carolina. Berry and Coulman did not have a custody agreement. Coulman had sole physical custody of their daughter from her birth. After Berry's transfer Coulman contacted Alaska's Child Support Services Division (CSSD) for assistance in obtaining child support from Berry. In May 2011 CSSD entered an order requiring Berry to pay Coulman $ 773 per month in child support.
In September 2014 Berry, representing himself, filed a complaint in Fairbanks superior court requesting sole legal and physical custody. When he filed the custody complaint, Berry lived in North Carolina[1] and asserted that Coulman and their daughter lived in Alaska. Coulman retained counsel and answered Berry's complaint. She stated that she and her daughter were living in Germany, not Alaska.
In October 2015 the superior court held a status hearing to address questions about its subject matter jurisdiction over the custody dispute. The court concluded it had jurisdiction to determine child custody pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[2] The court entered a temporary custody order granting Coulman primary physical custody and shared legal custody with Berry. The temporary custody order did not address child support.
*267 In March 2016 Coulman filed a motion to modify child support, arguing that the child support guidelines affidavit Berry had filed in September 2014 was "stale." Coulman asked the court to order Berry to file a current child support affidavit with supporting income tax returns and military leave and earnings statements. At a status hearing on the motion, Berry asked for more time to respond, but ultimately agreed to provide updated financial disclosures.
In April Berry filed an updated affidavit and accompanying documents. Shortly thereafter Coulman sent discovery requests to Berry seeking additional information and documents about his income, specifically showing how his pay was affected by his deployments. Berry filed objections and responses to Coulman's discovery requests with the superior court. Over the next nine months they continued to litigate issues relating to Berry's financial disclosures. They did not revisit the court's ruling with regard to its jurisdiction.
In January 2017 Coulman filed a "Motion For Modification Of Interim Child Support To Maximum Levels." She accused Berry of bad faith during discovery and argued that his incomplete financial disclosures showed that he was "hiding his income" and "making it impossible to accurately calculate child support." She argued that a "suitable remedy" would be to set child support at the maximum level unless Berry complied with Alaska Civil Rule 90.3[3] and the orders of the court. In response the court ordered that child support would be based upon the maximum income for child support calculations ($ 120,000) unless Berry filed and served a complete Rule 90.3 income affidavit with an unredacted income tax return and his last three military leave and earnings statements.
Berry retained counsel and opposed Coulman's motion later that month, apparently filing his opposition the same day that the court distributed its order. For the first time Berry argued that CSSD was the only Alaskan tribunal that had continuing, exclusive jurisdiction to modify the order. A week later Berry filed an updated child support affidavit.
The court denied Coulman's motion to set the child support at the maximum level in April and ordered Coulman to lodge an interim child support order setting the amount at $ 791.72 per month, effective October 1, 2014, based on Berry's recently filed child support affidavit.
Later that month Berry moved for reconsideration of the modification order. Berry reiterated his argument that only CSSD, the tribunal that established the original child support obligation, had continuing, exclusive jurisdiction to modify it. He also argued that the court had impermissibly modified the support order retroactively by making it effective on October 1, 2014, when Coulman had not filed her modification motion until March 2, 2016. Lastly Berry argued that there was insufficient proof of a "material change of circumstances" to warrant a modification under Rule 90.3.
The superior court addressed Berry's motion for reconsideration before the start of the scheduled custody trial in May 2017. The court (and Coulman's counsel) agreed that the effective date should be the date the motion to modify was filed and served. The court explained that it had not realized there was an existing order when it set the effective date as October 1, 2014.
Berry testified at trial that he lived in North Carolina but was a legal resident of Alaska, and that he maintained his Alaska residency because he and his wife intended to move back to the state upon his separation from the military. Berry stated that he was able to maintain his Alaska residency through the Servicemembers Civil Relief Act (SCRA).[4] He testified that he did not have an *268 Alaska driver's license, but did not pay state income tax in North Carolina because of his Alaska residency. Berry also testified he intended to claim an Alaska Permanent Fund Dividend (PFD) in 2017 because he was physically present in Alaska for the custody trial.[5]
At the close of trial the superior court briefly addressed the issue of jurisdiction, referring to its November 2015 order and asserting that it had subject matter jurisdiction to modify the support order pursuant to the UCCJEA.[6] The court noted that Berry had not raised the issue and that it would therefore proceed to the merits of the case.
Shortly after trial Coulman lodged a proposed order modifying CSSD's 2011 support order. Her proposed order required Berry to pay three different support amounts: $ 795.00 per month from March 1, 2016, until June 30, 2016; $ 1,018.29 from July 1, 2016, until January 31, 2017; and $ 819.55 beginning February 1, 2017. The three different amounts were based upon the formula in Rule 90.3 and accounted for differences in Berry's income during his deployment from July 2016 to January 2017 and then upon his return.[7]
Berry objected to Coulman's proposed order. He again argued that only CSSD could modify the 2011 support order. Berry also argued that there was no material and substantial change in circumstances to warrant modification of the support order. Berry addressed the different support obligations in the proposed order separately and argued that the proposed amounts for March through June 2016 and from February 2017 onward were modifications of less than 3% and less than 6% respectively-far below the 15% threshold for a presumed change in circumstances.[8] Berry also argued that his deployment from July 2016 to January 2017 was temporary and not a permanent change in income, so it should not be used as the basis for modification. Finally he argued for the first time that Alaska no longer had jurisdiction to modify the order pursuant to AS 25.25.205[9] and the federal Full Faith and Credit for Child Support Orders Act (FFCCSOA).[10]
*269 Coulman replied, arguing that pursuant to AS 09.05.010 Berry had put child support at issue when he filed his custody complaint. In response to Berry's newly raised jurisdictional argument, Coulman emphasized that support is part of custody under Rule 90.3.
The superior court issued its final custody order in September 2017. It ordered shared legal custody between the parents and awarded Coulman primary physical custody. The order's only reference to child support states:
Child support shall be ordered pursuant to Rule 90.3 of the Alaska Rules of Civil Procedure. A child support order shall enter separately. It is recognized that a judicial child support order is being entered over [Berry's] objections. Such objections were previously raised on the record in this matter.
On the same day the court signed Coulman's proposed order modifying child support. The court did not otherwise address Berry's objections or expressly state its jurisdictional basis for modifying the order.
Berry appeals the superior court's order modifying child support. He has not appealed any aspect of the court's custody order.
III. STANDARD OF REVIEW
Whether a court has jurisdiction to modify a child support order presents a question of subject matter jurisdiction,[11] which is a question of law that we review de novo.[12] "We reverse child support awards only if the superior court abused its discretion, applied an incorrect legal standard, or clearly erred in its factual findings."[13] Upon a showing of a material change of circumstances as provided by state law, the superior court may modify a final child support award.[14] "[W]e review a decision by the superior court to modify child support for an abuse of discretion."[15]
IV. DISCUSSION
A. The Superior Court Had Subject Matter Jurisdiction To Modify The Order.
Berry argues that the superior court lacked continuing and exclusive jurisdiction to modify the 2011 child support order. He argues that Alaska does not have jurisdiction because neither the child nor the parties lived in Alaska when the motion to modify was filed. He also argues that only CSSD and not the superior court has authority to modify the order that CSSD issued. He relies on the FFCCSOA and the Uniform Interstate Family Support Act (UIFSA), which was adopted and codified at AS 25.25.101 - .903.[16] Alaska Statute 25.25.205 outlines the superior court's jurisdiction to modify an existing support order. It provides:
(a) A tribunal of this state that has issued a child support order consistent with the law of this state has and shall exercise continuing, exclusive jurisdiction to modify its child support order if the order is the controlling order and,
(1) at the time of the filing of a request for modification, this state is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
(2) even if this state is not the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued, the parties consent in a record or in *270 open court that the tribunal of this state may continue to exercise jurisdiction to modify its order.
To address Berry's arguments we must determine whether the statute provides the support he claims. When we engage in statutory interpretation "[w]e interpret the statute 'according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose' ";[17] we apply "a sliding scale approach, where '[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[18] To determine whether the statute supports Berry's argument, we must identify the controlling order, determine Berry's residence, and decide whether the superior court can modify an order issued by CSSD. We address each question below.
1. The 2011 support order is the controlling order.
There is no dispute that the 2011 support order entered by CSSD is the controlling order at issue-Berry has not asserted, nor is there any evidence, that any other existing support order would control.
2. We define "residence of the obligor" to mean "domicile. "
We must next consider whether Alaska was Berry's "residence" when Coulman filed the motion to modify.[19] Berry argues that even though he is "allowed to maintain Alaska as his state of residence for federal tax purposes because he is in the military that does not mean that [he] is a resident or is residing in Alaska." Berry testified that he maintains Alaska as his state of residence for tax purposes pursuant to the SCRA[20] and that he intends to return to Alaska after he retires from the army.
We have not previously had occasion to define the meaning of the term "residence" in UIFSA. The term is not defined elsewhere in the child support statutes. A separate definitional statute, AS 01.10.055,[21] defines "residency" by focusing on a person's intent:
(a) A person establishes residency in the state by being physically present in the state with the intent to remain in the state indefinitely and to make a home in the state.
(b) A person demonstrates the intent required under (a) of this section
(1) by maintaining a principal place of abode in the state for at least 30 days or for a longer period if a longer period is required by law or regulation; and
(2) by providing other proof of intent as may be required by law or regulation, which may include proof that the person is not claiming residency outside the state or obtaining benefits under a claim of residency outside the state.
(c) A person who establishes residency in the state remains a resident during an absence from the state unless during the absence the person establishes or claims residency in another state, territory, or country, or performs other acts or is absent under circumstances that are inconsistent with the intent required under (a) of this section to remain a resident of this state.
Courts in other states have recognized that "residence" can have both a broad general meaning and a narrower legal meaning akin to "domicile."[22] A California court of appeals explained:
*271 Courts and legal writers usually distinguish "domicile" and "residence," so that "domicile" is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning, but which the law may also assign to him constructively; whereas "residence" connotes any factual place of abode of some permanency, more than a mere temporary sojourn. "Domicile" normally is the more comprehensive term, in that it includes both the act of residence and an intention to remain; a person may have only one domicile at a given time, but he may have more than one physical residence separate from his domicile, and at the same time.[23 ]
Given that UIFSA was intended to ensure uniform treatment of child support orders in different states and provides for "exclusive" jurisdiction based on residence, the California court determined that "residence" must be defined narrowly: "[U]nder the UIFSA, it is assumed that a person cannot have more than one residence. This, however, does not comport with the more general definition of residence noted above.... Instead, 'residence,' for the purpose of the UIFSA, must mean 'domicile,' of which there can be only one."[24]
The Utah court of appeals in Lilly v. Lilly reached the same conclusion for similar reasons.[25] It noted that UIFSA was intended to ensure that only one child support order would be valid at a given time.[26] It recognized that interpreting "residence" to mean "physical residence would potentially vest more than one state at a time with jurisdiction to modify a single child support order" which "could lead to competing modifications of child support orders-a troublesome result that clearly contravenes UIFSA's purpose."[27]
Other states have reached a different conclusion and given the term "residence" a broader meaning.[28] But after considering Alaska's general residency statute, which focuses on an individual's intent to remain in the state, and the purposes of UIFSA, we find that it would be inconsistent with these aims to adopt a broad definition of "residence." We therefore conclude that the "residence of the obligor" in AS 25.25.205 means the obligor's "domicile." That is the place where the obligor intends to remain or the place that is the obligor's legal residence.
3. Berry's residence is Alaska.
Berry testified at the custody trial that he maintains Alaska as his state of residence for tax purposes pursuant to the SCRA. He also testified that he intends to return to Alaska upon his retirement from the military. Under AS 01.10.055 Berry is an Alaska resident: he enjoys legal benefits from his continued legal residency in the state, and he intends to return and make Alaska his home.[29] Because Alaska was Berry's residence when he filed his motion to modify custody, Alaska had jurisdiction to modify the 2011 support order.[30]
*272 4. Alaska Statute 25.25.205 empowers the superior court to exercise jurisdiction to modify a support order issued by CSSD.
Berry reiterates his argument that, even if the State of Alaska has the authority to modify the order, the only tribunal in the state that could modify the order is CSSD. Alaska Statute 25.25.101(29) defines a tribunal as "a court, administrative agency, or quasi-judicial entity authorized to establish, enforce, or modify support orders or to determine parentage of a child." Alaska Statute 25.25.102(a) states that "[t]he superior court and the child support services agency are the tribunals of this state."
We have never before been asked to determine whether the language in AS 25.25.205 was intended to limit not just which state exercises jurisdiction over a support order but also the specific tribunal that can exercise jurisdiction. But it does not appear that such a restrictive reading of AS 25.25.205 would serve UIFSA's aim of preventing multiple support orders being entered.[31] Consequently, we construe "tribunal" to refer to both of the listed tribunals-the superior court and CSSD-as long as the tribunal's modification of an order otherwise complies with Alaska law. The superior court appropriately exercised subject matter jurisdiction when it modified CSSD's 2011 support order.
B. There Was A Material Change Of Circumstances.
Berry argues that Coulman failed to show by a preponderance of the evidence that a material change of circumstances occurred as contemplated by Rule 90.3.[32] Rule 90.3(h)(1) states:
A final child support award may be modified upon a showing of a material change of circumstances as provided by state law. A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order.[33 ]
The aggregate changes in Berry's income over the time periods specified in Coulman's motion to modify exceeded the 15% presumptive threshold. Berry contends that it was error for the superior court to include the income from his six-month deployment between July 2016 and January 2017 in its calculations, since this change in income was temporary; if his deployment income is excluded, his change in income falls short of the 15% threshold.[34] While short-term income changes generally do not justify modifications of ongoing support awards, we stated in Swaney v. Granger that "a child support award that is applicable to a past period should be based on a parent's actual income for that period."[35] And the commentary to Rule 90.3 states that a military member's specialty pay is included as income.[36]
*273 The superior court had evidence before it establishing three relevant time periods based on Berry's actual pay and showing that, taken together, his income had changed by more than 15% during the time periods at issue. Given our pronouncement in Swaney , this both met the 15% threshold for a material change in circumstances and was an appropriate method for calculating support covering past periods.[37]
V. CONCLUSION
We AFFIRM the superior court's order modifying child support.

Berry stated at the October 2015 hearing on the jurisdictional motion that he maintained Alaska as his residence. Throughout the pendency of this custody action Berry was either stationed in North Carolina or deployed overseas.

Alaska has codified the UCCJEA at AS 25.30.300 -.910. AS 25.30.300(a) states: "Except as otherwise provided in AS 25.30.330, a court of this state has jurisdiction to make an initial child custody determination only if ... no court of another state would have jurisdiction under the criteria specified in (1)-(4) of this subsection." The court concluded that "state" referred to the states of the United States, and since the only viable location for the custody case besides Alaska was Germany, the court "provisionally assume[d] subject matter jurisdiction."

See Alaska R. Civ. P. 90.3(e) (requiring each parent in a proceeding involving child support to "file a statement under oath which states the parent's adjusted annual income" along with a breakdown of that income and verification documents).

50 U.S.C. § 4001(a)(1) ("A servicemember shall neither lose nor acquire a residence or domicile for purposes of taxation with respect to the person, personal property, or income of the servicemember by reason of being absent or present in any tax jurisdiction of the United States solely in compliance with military orders."); 50 U.S.C. § 4001(b) ("Compensation of a servicemember for military service shall not be deemed to be income for services performed or from sources within a tax jurisdiction of the United States if the servicemember is not a resident or domiciliary of the jurisdiction in which the servicemember is serving in compliance with military orders.").

AS 43.23.005(a)(4) allows active-duty members of the military who are otherwise eligible for a PFD to maintain their eligibility while stationed out of state as long as they have "been physically present in the state for at least 72 consecutive hours at some time during the prior two years before the current dividend year."

See AS 25.30.300(a), (a)(5) (providing for "jurisdiction to make an initial child custody determination" if "no court of another state would have jurisdiction" to do so under the criteria set out by the statute). We note that the UCCJEA and the court's November 2015 order dealt with its jurisdiction to determine child custody, not its jurisdiction to modify support. But Rule 90.3 contemplates support awards in the context of custody determinations. Alaska R. Civ. P. 90.3(a). And as we discuss below, because Berry affirmatively claimed Alaska residency at trial, the court's jurisdictional determination was proper. See AS 25.25.205(a)(1).

See Alaska R. Civ. P. 90.3(a), (d), (f).

Alaska R. Civ. P. 90.3(h)(1) provides for modification of a final child support award "upon a showing of a material change of circumstances," which is presumed if the support amount calculated under the rule differs by more than 15% from the existing support order.

AS 25.25.205(a)(1) establishes jurisdiction for Alaska courts to modify a child support order issued by a tribunal of this state if Alaska "is the residence of the obligor, the individual obligee, or the child" at the time a motion to modify is filed. Berry argued that "[n]either parent nor the child in this case live[d] in Alaska" and that AS 25.25.205 could not therefore support jurisdiction.

28 U.S.C. § 1738B. The FFCCSOA provides that a state court that issues a child support order "no longer has continuing, exclusive jurisdiction of the ... order" if that state "no longer is the child's [s]tate or the residence of any individual contestant" and the parties have not consented to the jurisdiction of courts of that state. 28 U.S.C. § 1738B(e)(2)(A). Berry argued that this meant his transfer to North Carolina had ended the Alaska court's jurisdiction to modify the order and that "[a]ny modification ... must be accomplished through the North Carolina court."

See Teseniar v. Spicer , 74 P.3d 910, 913-14 (Alaska 2003) (analyzing whether Alaska court had subject matter jurisdiction under AS 25.25.205 to modify child support order).

Sherrill v. Sherrill , 373 P.3d 486, 489 (Alaska 2016) (citing Vanvelzor v. Vanvelzor , 219 P.3d 184, 187 (Alaska 2009) ).

Holmes v. Holmes , 414 P.3d 662, 666 (Alaska 2018) (citing O'Neal v. Campbell , 300 P.3d 15, 16 (Alaska 2013) ).

Id. at 667 (quoting Alaska R. Civ. P. 90.3(h)(1) ).

Id. (quoting Richardson v. Kohlin , 175 P.3d 43, 46 (Alaska 2008) ).

Ch. 57, §§ 1-28, SLA 1995 (adopting UIFSA); see also Bartlett v. State, Dep't of Revenue ex rel. Bartlett , 125 P.3d 328, 330-31 (Alaska 2005) ("A complex statutory scheme of federal legislation exists to promote efficiency and enforcement of interstate child support judgments.... UIFSA[ ] and the ... FFCCSOA[ ] require states to enforce other states' child support judgments in order to create uniformity in interstate judgments.... Alaska ha[s] adopted UIFSA.").

Reasner v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 394 P.3d 610, 617 (Alaska 2017) (quoting Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp. , 189 P.3d 1032, 1036 (Alaska 2008) ).

Id. at 617 (alteration in original) (quoting State, Commercial Fisheries Entry, Comm'n v. Carlson , 270 P.3d 755, 762 (Alaska 2012) ).

AS 25.25.205(a)(1).

See 50 U.S.C. § 4001(a)(1) (providing that presence in jurisdiction solely pursuant to military orders does not alter servicemember's domicile or residence for tax purposes).

AS 01.10.055 is part of a series of general definitions and rules of statutory construction to "be observed in the construction of the laws of the state unless the construction would be inconsistent with the manifest intent of the legislature." AS 01.10.020.

See In re Marriage of Amezquita , 101 Cal.App.4th 1415, 124 Cal.Rptr.2d 887, 889 (2002) ; Kean v. Marshall , 294 Ga.App. 459, 669 S.E.2d 463, 465 (2008) ("The terms 'residence' and 'domicile' ... are not synonymous and convertible terms ...; questions of domicile and residence are mixed questions of law and fact.").

Amezquita , 124 Cal.Rptr.2d at 889 (emphasis in original).

Id. at 890 (construing California's then-current codification of UIFSA's provision for continuing, exclusive jurisdiction to modify child support).

250 P.3d 994, 1000-01 (Utah App. 2011).

Id. at 1001 (quoting Case v. Case , 103 P.3d 171, 174 (Utah App. 2004) ); accord Amezquita , 124 Cal.Rptr.2d at 890.

Id.

See, e.g. , State ex rel. SRS v. Ketzel , 47 Kan.App.2d 536, 275 P.3d 923, 927-28 (2012) (noting that "residence" is not synonymous with "domicile"); see also Unif. Interstate Family Support Act § 205 cmt. (amended 2015) ("[R]esidence is a fact for the trial court, keeping in mind that the question is residence, not domicile.").

AS 01.10.055.

AS 25.25.205(a)(1). While Berry's complaint for custody stated he was a "resident of Harnett County, North Carolina," his trial testimony provided sufficient evidence to confirm his Alaska residency as defined by AS 01.10.055.

See Bartlett v. State, Dep't of Revenue ex rel. Bartlett , 125 P.3d 328, 330-31 (Alaska 2005) (noting that UIFSA and the FFCCSOA are aimed at creating uniformity among interstate judgments).

Berry also passingly argues that his due process rights were denied. This argument has been waived: "[W]here a point is given only a cursory statement in the argument portion of a brief, [it] will not be considered on appeal." Windel v. Carnahan , 379 P.3d 971, 980 (Alaska 2016) (quoting Adamson v. Univ. of Alaska , 819 P.2d 886, 889 n.3 (Alaska 1991) ).

We note that there is a potential inconsistency in the court rules commentary about whether a material change in circumstances showing is required in a case where there has not been a modification in over three years and ask the court rules committee to examine the issue. Compare Alaska R. Civ. P. 90.3 editors' note to Alaska R. Civ. P. 90.3(h)(1), with Alaska R. Civ. P. 90.3 cmt. X.A.

See Curley v. Curley , 588 P.2d 289, 291 (Alaska 1979) (stating that in general a change in circumstances must be "more or less permanent rather than temporary" to warrant modifying support).

297 P.3d 132, 139 (Alaska 2013). In Mitchell v. Mitchell we distinguished Swaney , seemingly identifying the cited passage as dicta. 370 P.3d 1070, 1078-79 (Alaska 2016). But the Mitchell opinion implicates a different issue than the one addressed in Swaney : whether awards for prospective support must always be based upon expected future income. Id. at 1079. In Mitchell we determined that the superior court could appropriately capture a past one-time withdrawal from a retirement account in a prospective award. Id. at 1079-80.

Alaska R. Civ. P. 90.3 cmt. III.A.28.

Berry argues that the superior court impermissibly retroactively modified the 2011 support order by entering an order with an effective date of modification of March 1, 2016, rather than March 2, 2016. The superior court did err in impermissibly retroactively modifying the order by one day. See Millette v. Millette , 177 P.3d 258, 266 (Alaska 2008) (considering a retroactive child support modification to be prohibited), overruled on other grounds by Geldermann v. Geldermann , 428 P.3d 477, 487 n.52 (Alaska 2018) ; Alaska R. Civ. P. 90.3(h)(2). We find this seeming clerical error was de minimis and therefore remand is not required. Cf. Fernau v. Rowdon , 42 P.3d 1047, 1055 (Alaska 2002) (concluding that alleged error in trial court's spousal support calculation was "negligible" and did not require remand).